My name is John Vanister. I'm counsel for Appellant S.J. Amoroso Construction Co., Inc. I'd like to make several points in connection with the substantive error committed by the District Court as well as the procedural error committed by the District Court. First, as to substantive error, the District Court committed that error by deciding contested issues of fact regarding the status of my client's president, Paul Mason, in connection with the letter he wrote. The first point is that they made a determination based upon mischaracterizations by Executive Risk in their reply brief. That determination was a legal evaluation that my client acted in his individual capacity versus his official or corporate capacity. Apparently the court did not understand or failed to make the distinction between acting within the scope of authority and acting within the scope of employment. Second, the court relied on the authority of the August Entertainment case for ruling that my client acted as an individual. That was substantive error because the August Entertainment case does not hold that the individual officer acted in such a way that it caused no coverage for the corporation. If you look at that holding closely, in that decision the court found that the individual officer acted as an individual which barred any coverage for him under the directors and officers policy. They made no such ruling for the corporation and actually went into a discussion in that case about the contract exclusion clause in the particular directors and officers policy. Actually, August Entertainment supports our position for finding that Mr. Mason, when he wrote the letter, acted in his official capacity because if you compare the facts of the two cases, the officer in the August Entertainment case signed a contract. Mr. Mason did not. He signed a contract that was an issue in that case. Mr. Mason did not. And the evidence is clear that Amoroso, my client, was never a party to the construction contract. If you compare the documents. Yes, Judge. Can I ask you just, if we got to the reasonable expectations of the insurer, your client, and here, as I understand what would actually happen, Mr. Mason, in essence, said some language to Mauna Kea Properties that could be interpreted as saying, we're guaranteeing DAF's liability. So in essence, joining in on the contract, at least that's how, that's at least half of their claims are that there was a breach of the contractual duties that Amoroso had assumed. And so regardless of the language of the insurance policy, was that the sort of coverage that Amoroso had bargained for? I mean, is that the expectation that the liability on this contract that is in essence interpreted as being guaranteed by Amoroso was breached? Yes, Your Honor. And let me explain why. The reason is that you have to make a distinction between, and the district court did do this in their decision, you have to make a distinction between the types of causes of action that Mauna Kea alleged against Amoroso. There were a series of breach of contract causes of action and tort actions that arise out of the contract. And the district court identified those in Section 1B of their decision. And then they identified three tort actions which they stated arose out of the representation made in Mr. Mason's letter. And those were the misrepresentation claims, promissory estoppel, and gross negligence. And the point being with regard to those causes of action, my client is now exposed to claims by Mauna Kea in that case when they wouldn't have otherwise because of the letter and because of the letter making misrepresentations on Amoroso's behalf. Now, as to the issues that you talk about with regard to what the letter effectively said, those require an analysis of contested issues, which is not appropriate for summary judgment. Because you have to look at what was the letter's purpose, what was Mr. Mason's status when he wrote the letter, and what was the impact. As far as we got in the underlying case, the Mauna Kea dispute was my client, Amoroso, was sued and faced an exposure of $40 million because of that letter. Without the letter, there was no basis for Amoroso to be named in that underlying litigation. Well, half of the claims, as I read the complaint, the Mauna Kea complaint, half of the claims were breach of contract or tortification of contract type claims. And the other half was along the lines of, well, if it wasn't a contract, then you lied, when you said that you were actually guaranteeing the contract. So those claims, I am having more trouble seeing why those are contract type claims, because it's, you know, it's the flip side of it's either a contract or you lied when you said you were going to guarantee the DAP contract, DAP contract. But didn't those misrepresentations, even those other half of the claims, aren't they at least related to the contract? No, they're not. And if you look closely at the letter, it says nothing about the contract. It says nothing about the construction project, and it says nothing about any guarantee that Amoroso is going to perform the contract. And that gets into a discussion about what Executive Risk is trying to do in connection with this appeal, and that is expand the scope of the contract exclusion clause to cover the other torts, which the district court, if you look at their decision closely, identified under Section 1A clearly arose out of Mr. Mason's letter. And all they ruled on was that because they found Mr. Mason's status to be as an individual, there's no coverage because he's not in the definition of insured organization. There is a clear distinction in the district court's ruling, in the Mauna Kea lawsuit, and the facts between misrepresentations arising out of the letter, which aren't Amoroso is going to guarantee the contract or guarantee performance or Amoroso is going to build the project or pay your subcontractors and suppliers, which is what I would view as a direct obligation under the contract, as opposed to the misrepresentations that were made, which we would argue if we got the chance at trial, Amoroso may not have any exposure for at all. But we never got to that point because my client had to go to mediation without executive risk representation, facing that $40 million exposure, and they settled the case and paid that settlement out of their own pocket. So I wanted to point out both the substantive error, which relates to the three points that I've, two of the three I've made, and the third point I'd make is, in order to decide Mr. Mason's status, they had to decide, they decided to dispute his issues of fact. Then as to the procedural error, which ties right into that, that error arose because executive risk raised for the first time in their reply brief the issue about Mr. Mason's individual status. Now, we were not given an opportunity to refute that until this appeal. Well, they argue. Go ahead. You know, that, we see this all the time where the district court countenances and argument made, you know, kind of in the reply brief, and I can't really find anything that says it's absolute error for the district court to consider that. I mean, you do have a motion for reconsideration, then possibility to go back if you want to argue more. So I'm having some trouble on that procedural issue ascribing any fallout to it. All right. Well. Maybe you can help me if there's some cases to that effect. It's certainly true on appeal, but now we're looking really at the district court, not what happens on appeal. In our briefs, both our opening and reply brief, we cited to a series of authority, some Ninth Circuit authority as well, as to the issue of raising the argument for the first time on appeal. And if you look at the facts in our case, where. That's not raising it on appeal. It's raising it at the tail end of the district court, isn't it? Isn't that what happened? But there were several cases we cited where it was raised at the district court level. Now, they have made the argument that there are, there's one or two cases where it was raised on appeal. But those cases are different than our situation, because what they did, or executive risk, is they took an affirmative position regarding Mr. Mason's status in their opening brief, and they cited to the letter as their evidence. Then in their reply brief, they flip-flopped, based upon a mischaracterization, a mistaken understanding of what Amoroso said in their declaration. Then we tried to get a supplemental brief in, which they argued waives our right. However, if you look at the district court's decision, they made no mention of our supplemental brief. They didn't address any of the issues we raised in that brief. And the most important point is they canceled oral argument. So we were given no opportunity to refute those points until now. You could have made a motion for reconsideration. I get them all the time. I understand. But the issue, there would be a concern about whether or not that particular motion was appropriate because of this, pardon me, because of the circumstances. You would have found out if you made the motion. I understand. But the, I believe that based on the authority we presented, we are appropriately in front of you on that issue. And it's clear, it's so clear that executive risk has even abandoned the argument in this appeal, that the error committed with regard to Mason's status, both substantively and procedurally, was such that that facet of the decision should be overturned. And they have now asked this Court in their opposition to merely expand the scope of the contract exclusion clause to all of our claims, all of the claims against Amoroso. To sweep that in. Just to sweep it in. If, leaving aside the timing of the issue being raised, if we determined the Court was wrong in merging, you know, scope of employment and employment in the ordinary course, and that he was, the district court was substantively wrong in that, then the next decision, as I understand it is, well, is it part of the contract exclusion or is it, as you've argued, a separate independent two or three-tort claim? So that, in order for you to prevail, we would need to decide that it doesn't fall under the contract exclusion, correct? I would partially dispute that, because this is an issue that they have raised in opposition. They are challenging the district court's decision. The district court's decision is clear in subpart 1A as to how they evaluate the exposure or the merits of those claims. They identify the three torts. They identify Mr. Mason's letter as the source, that the misrepresentations arise from his letter. And then they go so far as to say that executive risk has coverage liability or obligation because of the way the torts are alleged. And the only reason they get off the hook is because of Mason's status. Well, that, maybe I was just not saying it artfully, but I'm saying if the court, if they're wrong as to his status, then there's coverage, correct? That's correct. All right. And we go back. You have about two and a half minutes if you wanted to reserve. Thank you. I'll reserve that. Thank you very much. Thank you. Good morning. May it please the Court. My name is Gilbert Jensen, and I'm representing Executive Risk Indemnity, Inc. Now, one of the issues that seems to be misunderstood in this case is the concept of what is a contract or agreement. And we have two contracts or agreements involved in this, in the underlying case involving Mauna Kea. One is the construction contract, and one is the separate agreement allowing the construction contract to be assigned from Andrew Youngquist Construction Company to DAP, an LLC that was 50% owned by Amoroso and 50% owned by Youngquist. And in order to obtain the consent of Mauna Kea to the transfer of that contract, certain things had to be obtained from the parties that were requesting the transfer. And those were outlined in correspondence that went back and forth from Mr. Mason, purportedly, at least in his letter, on behalf of Amoroso, and then a responding letter from Mauna Kea agreeing to the transfer of the contract or assignment of the contract to DAP. But let me ask you this. Sure. I mean, you have, I think here, a simple cup of tea. There are fraudulent, alleged misrepresentations that induce somebody to assign a contract. Isn't that really what we're talking about here? Yes, right? That is correct. And you're claiming that that's not covered by a D&O policy, correct? That's correct. Okay. Now, as I read the policy, the exclusion, I think we can probably all agree that everything arose from this contract. If there was no contract, we wouldn't have any assignment. We wouldn't have any of these problems. But the specific exclusion talks about any actual or alleged liability. I emphasize that word. Any actual or alleged liability under any written or oral contract or agreement. Can you please tell me where there is alleged liability under any written or oral contract or agreement in this case? Certainly. It's under the construction contract and it's under the assignment agreement. The letter from Mr. Mason on behalf of Amoroso was characterized as a guarantee that Amoroso ---- And if it is, we don't agree with that or if that's subject to some different interpretations or should resolve the trial, then do you agree that there may be coverage then? No, Judge, I do not, for the following reason. It is the allegations of MONICAEA that are important and not what the ultimate outcome of the underlying case would have been. Well, who's the contract here between? MONICAEA? Right. Yes. And? And a number of entities. Those entities include Youngquist, DAP. Right. And as we contend or as MONICAEA contends, it also includes Amoroso. What difference does it make whether this contract was or was not assigned? I mean, underneath it all, the question is if there is a breach of a contract, whether it's been assigned or not. I can see where that's the type of exclusion that makes sense. But you're talking about simply a fraudulent misrepresentation here. I don't see where that really conjures up liability under a written oral contract unless there is a guarantee that's involved there. And there would be no liability and no lawsuit but for the contract. That's not what the exclusion says. It talks about liability. And the potential liability of Amoroso is for the alleged guarantee of the obligations of death. If there is a guarantee. Your argument is that if they're taking the guarantee contract as a separate contract, that inducement to enter into it, representations related to it arise out of it? That is correct. And so any representations by anyone on behalf of Amoroso were representations that created or arose from the guarantee agreement. We get back to the same thing that I'm concerned about. If there were no guarantee here, we don't interpret it that way. It seems that there ought to be basically no coverage here for somebody making fraudulent misrepresentation to his boss. With one exception, and that is but for the breach of the construction contract, there would be no liability of anybody. It's not a but for a policy. You're talking about liability arising under the contract. It's arising from which has been interpreted by courts to include anything that has any connection with the underlying contract. Right. But that's the arising from the liability. As Judge Block was saying, it's liability under the contract. So when I look at that language, I go, well, in normal speech, that means that under the terms of either the MKDAP contract or you're now saying the assignment contract, Amoroso has incurred liability. I can see that might be true if Amoroso had been a guarantor. And that's, as I was saying to your opposing counsel, half of the Mauna Kea complaint seems to say you were a guarantor to Amoroso and you breached. But the other half is saying, and if you're not a guarantor, you lied when you said that you would guarantee. And those lies, I just don't see how that's arising under any contract at all. In fact, Mauna Kea is alleging there wasn't a contract and you lied in saying that there was. So how can that be liability under a contract? Because the damages being sought by Mauna Kea were the construction damages in the underlying contract. And so those arise out of the contract. Well, for Mauna Kea, that's how they're measuring their damages. But I don't see how Amoroso has incurred liability under that contract. Amoroso didn't incur the liability under the terms of that contract. I just don't see how you can bridge that gap. And I respectfully disagree, Your Honor, because the source of any exposure to any of the parties who were being sued in Mauna Kea was the construction job and the failures performed under the plans and specifications of that construction contract. What interpretation of an insurance policy, which is supposed to be construed against you, isn't it? It depends, Your Honor, on whether we're looking at the insuring clause or under exclusions. And exclusions, yes. It should be interpreted. I'm sorry? It's pretty strict. We have to pretty strictly interpret those exclusions, aren't we, under the law? We do. Yes, Your Honor. And you're proposing something that seems to be contrary to that, with this broad reach here, this but-for, this underlying contractual scenario which spawned all of this. With the exception, though, Your Honor, on exclusions that have language just like this exclusion in the executive risk contract that uses the same language, based upon, arising from, or in consequence of, are interpreted as being extremely broad. But in most cases, the party was the insured was actually a signatory to the contract or was involved with the subcontractors. It didn't seem to be analogous to this case, where Amoroso was not, unless they were a guarantor, as half of Mauna Kea's claims say, they weren't parties to the contract. With exceptions to that, Judge Ikuda, and one of those exceptions is the type of case where a director or officer is sued because of representations made that resulted in a contract of the insured organization. And in that sort of situation, you don't have a signatory to the contract who is being denied coverage based upon the same type of exclusion. I mean, I don't read it that it has to be a signatory, because that would read in another term to the insurance policy. In other words, they don't have to be a party to the contract for it to rise under. However, it has to be a consequence of actual or alleged liability of the insured organization. So it seems to me that even though they don't need to be a party to the contract necessarily, they have to have actual or alleged liability of the insured organization. So we're kind of back to that language as being a potential stumbling block for you. How do you interpret that in this fact situation? What's the actual or alleged liability under the contract, not arising out of, but under? And under the contract, it is the construction contract, which Amoroso is alleged by Moniquea to be a party to based upon the exchange of correspondence. But that's only half of their claims. The other half is that they weren't part of the contract and they lied when they said they were. Not that they weren't part of the contract, but an alternative theory is a tort theory based upon the same facts. And if you look at the complaint by Moniquea against Amoroso, starting at paragraph 20, the same representations that are in the correspondence are the hook, or whatever you want to call it, to make Amoroso a party to the construction contract, not just to the separate agreement on agreeing to the assignment. But at the end of the game, aren't you simply talking about an alleged false misrepresentation, a classic tort generally covered by DNO policies that just induce somebody to assign a contract? Nothing to do with the liability under the contract. I just don't see how you get around that. Let me speak to that issue, because one of the areas in which things got a little mixed up at the district court level has to do with the authority of Mr. Mason. And one of the things that the plaintiff, Amoroso, did in its opposition to the motion to summary judgment is claim that Mr. Mason was acting in an ultra-virus way, that he's – everything he did, he did not have the power to do. He didn't have the – You're not addressing my question. I'm getting to it in a roundabout way, Your Honor, so if you could bear with me just a moment. And then what happens when you look at the insurance policy and the claims that are actually made? The claim is not against a director or officer for misrepresentation. It's an alleged claim of wrongful act by an insured organization. And if you don't have a wrongful act by an insured organization because the insured organization itself is claiming the act was by an individual, was ultra-virus, not authorized, they're not a party to it, they don't agree to abide by it, then you don't have a wrongful act by an insured organization. So if an employer – I'm sorry. Go ahead and answer the last question. That is one of the arguments. But I'm – it's apparent I have a little disagreement with Your Honor concerning the scope of the agreements and whether there is potential exposure under the agreement to stand behind the obligations of DAP, which is a separate agreement created by those letters in 2001. Okay. I just wasn't quite understanding your argument about the capacity in which Mr. Mason was acting. As I understood, under a DNO policy, say, for example, your officer is engaged in Clearly, that's not – the insured organization isn't saying that that's what was an authorized act by the officer, but it would be covered, as I understand it, under the DNO policy. That's why you have it. So how can it matter whether it was specifically authorized by the company with respect to the insurance, the coverage? In this situation, they're claiming the only party to the litigation was Amoroso, the only insured. No insured individual was a party to the litigation. As a result, you have to interpret the insuring clause for what are called entity coverage. In this case, I believe it's clause C of the insuring clauses. And it covers wrongful acts by the insured organization. And my point was that if the insured organization is providing us with extrinsic facts, which it did at the time of its opposition to our motion for summary judgment, that these were ultra-various acts not authorized by the company, then they are no longer claiming that it is a wrongful act by the insured organization. I'd just like at this point to raise a couple of other issues, and that would be the one that is in all of the cases that interpret breach of contract exclusions and the language arising out of, in connection with, et cetera, the point they make with respect to the tort-type claims that are asserted in the same breach-of-contract complaint is that but for the existence of the contract and the contract damages that are being sought to be recovered, there would be no claim for the tort act, no claim of misrepresentation, no claim of conversion, no claim of whatever the specific claim might have been in those other acts. And that's what we're faced with here. But for the construction contract defects, the failure to complete the Maunakea project, there would be no claim against DAP, there would be no claim against Amoroso. Without that construction contract, there would be no lawsuit and there would be no liability. Thank you. Thank you. Can you address the point that there wouldn't be, there's no act by the insured organization if Amoroso has disavowed the acts of Mr. Mason? Certainly. And we addressed that both in our opening and reply brief. That is a mischaracterization of the definition of ultra-virus act as well as the declaration that Mr. McManus, the current president of Amoroso stated. All we said was that Mr. Mason said those things in his letter without authority but not outside of his scope of employment. And if you look at the letter and the authority the district court relied on, August Entertainment, the letter that Mr. Mason wrote is on letterhead. The signature block lists the corporation and then Mr. Mason signs as president of the corporation. Those facts are distinguishable from August Entertainment where the agreement, the contract, was signed as an individual and didn't make reference to the party being a corporation. So not only are they mischaracterizing the status issue, unfortunately the district court, in reliance on executive risk arguments in their brief, misapplied the August Entertainment case. And I believe the August Entertainment case actually supports our fact pattern for finding Mr. Mason acted in his status as an employment president of the corporation at the time. A couple of other quick points. First of all, counsel made a general statement about these cases, this group of cases that I'm assuming he's referring to, the Spiritus, Southgate, Medill, and I'll add August Entertainment, which talk about the contract issues. In every one of those cases, the heart, the essence of the claim was a breach of contract. Every party that happened to be insured was looking to their insurance company to provide coverage for the performance obligation under the contract. That's what I would call a practical view on the purpose of a contract exclusion clause in their policy. My client expects to be represented by its carrier, its D&O carrier, for misrepresentations. We are not asking in this case that the executive risk provide coverage for whatever obligations exist under the construction contract. Unfortunately, the pleading was not well drafted by Mauna Kea, and they named Amoroso as a party to the contract. And they weren't. Now, as to this argument they make about the assignment, there's no evidence that that assignment was a contract. To get to the point that finding that assignment to be a contract, you have to evaluate facts that are contested or disputed. There aren't even sufficient facts in this record to find that. There's no writing. There's no consideration for any assignment to be held a contract. And he's mischaracterized what the Mauna Kea pleadings say about that assignment being a contract. I see I'm out of time. Thank you very much. Thank you. Thank counsel for their argument this morning. It's very helpful. The case of Amoroso v. Executive Risk is submitted.
judges: McKeown, Ikuta, Block